EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| SCHLUMBERGER TECHNOLOGY CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 6:20-CV-00035 |
| v. | ) ) | |
| CAROLINA CASUALTY INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) | |

**DEFENDANT'S NOTICE OF REMOVAL**
**EXHIBIT C: COPIES OF PLEADINGS ASSERTING**
**CAUSES OF ACTION AND ALL ANSWERS TO SUCH PLEADINGS**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW, Carolina Casualty Insurance Company, the defendant in the above entitled and numbered cause, and files copies of all pleadings asserting causes of action and all answers to such pleadings as required by Local Rule 81.2.

Envelope: UPS_LETTER_CENTER
WINDOW
Total Pages: 34
SafetySeal(101761)



MARA VELASCO
2149323601
CT - DALLAS SOP TEAM
1999 BRYAN STREET
DALLAS TX 75201

**1.0 LBS    LTR      1 OF 1**

**SHIP TO:**
ANITA  NAPOLI
9045966935
CAROLINA CASUALTY INSURANCE GROUP,
5011 GATE PARKWAY
BLDG 200 SUITE 200
**JACKSONVILLE  FL 32256**

**FL 322 9-04**

**UPS NEXT DAY AIR**            **1**
TRACKING #: 1Z X21 278 01 0587 6110

BILLING: P/P

Reference No.1: SOP/2401130/537631764/CT SOP Custo

XOL 20.04.05     NV45 28.0A 04/2020

1537537

18

Origin: Wolters Kluwer UPS 562130

**CT Packing Slip**

CT Corporation

| | |
|---|---|
| **UPS Tracking # :** | 1ZX212780105876110 |
| **Created By :** | Amit Sankhyan |
| **Created On :** | 05/06/2020 02:47 PM |
| **Recipient :** | |

**Anita Napoli**

| | |
|---|---|
| Title : | -- |
| Customer : | Carolina Casualty Insurance Group, LLC |
| Address : | 5011 Gate Parkway |
| Email : | anapoli@carolinacas.com |
| Phone : | 904-596-6935     Fax :    - |

| | |
|---|---|
| **Package Type :** | Envelope |
| **Items shipped :** | 1 |

| Log # | Case # | Entity Name |
|---|---|---|
| 537631764 | 200425134 | CAROLINA CASUALTY INSURANCE COMPANY |

 **CT Corporation**

**Service of Process Transmittal**
05/06/2020
CT Log Number 537631764

**TO:** Anita Napoli
Carolina Casualty Insurance Group, LLC
5011 Gate Parkway, Bldg 200 Suite 200
Jacksonville, FL 32256

**RE:** **Process Served in Texas**

**FOR:** CAROLINA CASUALTY INSURANCE COMPANY  (Domestic State: IA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | SCHLUMBERGER TECHNOLOGY CORPORATION, PLTF. vs. CAROLINA CASUALTY INSURANCE COMPANY, DFT. |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # 200425134 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Dallas, TX |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 05/06/2020 postmarked: "Illegible" |
| **JURISDICTION SERVED :** | Texas |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1ZX212780105876110<br><br>Email Notification,  Anita Napoli  anapoli@carolinacas.com<br><br>Email Notification,  Anna Thomas  AThomas@wrberkley.com |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>155 Federal St Ste 700<br>Boston, MA 02110-1727 |
| **For Questions:** | 800-448-5350<br>MajorAccountTeam1@wolterskluwer.com |

Page 1 of  1 / AS

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

ESTHER RUIZ
DEWITT COUNTY DISTRICT CLERK
307 N GONZALES STREET
CUERO, TEXAS 77954





7017 1450 0001 3470 2167

RETURN RECEIPT
REQUESTED

CAROLINA CASUALTY INSURANCE COMPANY
BY ITS REGISTERED AGENT:
C.T. CORPORATION SYSTEM
1999 BRYAN ST., STE 900
DALLAS, TEXAS 75201-3136

**Citation for Personal Service**

## THE STATE OF TEXAS

NOTICE TO DEFENDANT: "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation, petition and requests a default judgment may be taken against you."

TO **CAROLINA CASUALTY INSURANCE COMPANY, By Its Registered Agent: C.T. CORPORATION SYSTEM, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136,** Defendant, Greeting:

You are hereby commanded to appear by filing a written answer to the Plaintiff's Plaintiff's Original Petition and Requests for Disclosure at or before ten o'clock a.m. of the Monday next after the expiration of twenty days after the date of service of this citation before the Honorable District Court 267th Judicial District of DeWitt County, Texas, at the Courthouse of said County, 307 N. Gonzales Street, Cuero, Texas.

Said Plaintiff's Petition and Requests were filed in said court, by Mr. Michael G. Terry, Attorney, whose address is 800 N. Shoreline Blvd., 2000 One Shoreline Plaza, North Tower, Corpus Christi, Texas 78401 on this 28th day of **April**, A.D., **2020,** in this case, numbered **20-04-25,134,** on the docket of said court, and styled,

**SCHLUMBERGER TECHNOLOGY
CORPORATION
VS.
CAROLINA CASUALTY INSURANCE
COMPANY**

The nature of Plaintiff's demand is fully shown by a true and correct copy of Plaintiff's Plaintiff's Original Petition and Requests for Disclosure, accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at Cuero, Texas, this the **30th** day of **April**, A.D., **2020.**

CLERK OF THE COURT
ESTHER RUIZ
DeWitt County District Clerk
307 N. Gonzales Street
Cuero, Texas  77954

ESTHER RUIZ
DeWitt County District Clerk

By _Jennifer Moyes_ Deputy

FILE NO. **20-04-25-134**

**IN DISTRICT COURT**
**267TH JUDICIAL DISTRICT**
**OF DEWITT COUNTY, TEXAS**

## CITATION FOR PERSONAL SERVICE

**SCHLUMBERGER TECHNOLOGY**
**CORPORATION**
**VS.**
**CAROLINA CASUALTY INSURANCE**
**COMPANY**

Issued April 30, 2020

ESTHER RUIZ
DeWitt County District Clerk

By _Jennifer R Noyes_
  Deputy

### OFFICER'S RETURN BY MAILING

CAME TO HAND ON THE 30TH DAY OF APRIL, 2020AND EXECUTED BY MAILING CERTIFIED MAIL RETURN RECEIPT A TRUE COPY OF CITATION TOGETHER WITH A COPY OF PLAINTIFF'S ORIGINAL PETITION AND REQUESTS FOR DISCLOSURE AT THE FOLLOWING ADDRESS.

| NAME & ADDRESS | DATE SIGNED | BY WHOM |
|---|---|---|
| CAROLINA CASUALTY INSURANCE COMPANY | | |
| BY ITS REGISTERED AGENT C.T. CORPORATION SYSTEM | | |
| 1999 BRYAN ST., STE 900 | | |
| DALLAS, TEXAS 75201-3136 | | |

AS EVIDENCED BY THE SIGNED RETURN RECEIPT ATTACHED HERETO AND INCORPORATED IN THE RETURN.

NOT EXECUTED AS TO _____      FOR THE FOLLOWING REASON

TO CERTIFY WHICH WITNESS MY HAND OFFICIALLY.  FEE FOR SERVICE: $85.00

ESTHER RUIZ
DeWitt County District Clerk

BY_____
  DEPUTY

Filed
4/28/2020 4:03 PM
Esther Ruiz
DeWitt County
District Clerk
JN

**CAUSE NO.** __20-04-25,134__

| | | |
|---|---|---|
| SCHLUMBERGER TECHNOLOGY CORPORATION | § § § | IN THE DISTRICT COURT |
| VS. | § § | __267TH__ JUDICIAL DISTRICT |
| CAROLINA CASUALTY INSURANCE COMPANY | § § § | DEWITT COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION
## AND REQUESTS FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Schlumberger Technology Corporation ("STC"), Plaintiff and files this Original Petition against Carolina Casualty Insurance Company, Defendant. As good and sufficient grounds therefor, Schlumberger Technology Corporation would respectfully show the Court the following:

1.

Discovery in this case is intended to be conducted under Discovery Control Plan Level 3.

Pursuant to Section 804.103 of the Texas Insurance Code, service of process should be made upon the commissioner of the insurance or agent for Carolina Casualty Insurance Company, C.T. Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

Venue is proper in this county because the contract made the basis of this suit was to be performed in DeWitt County, Texas, the county where the underlying suit was filed and concluded. Texas Civil Practice and Remedies Code Section 15.002(a)(1).

**DEFENDANT'S / RESPONDENT'S
COPY**

2.

On or about August 22, 2014, Ryan Edison, while in the course and scope of his employment for STC, was operating a 2011 Peterbilt tractor, pulling a trailer, both vehicles owned by STC. Edison was transporting the vehicle and the equipment on the trailer to an oil wellsite. He was traveling north on U.S. 87. He started to make a left turn onto FM 953. At the same time and on the same highway, Darrel Campbell was operating a sand hauler owned by MLH Enterprises, Inc. and in service to Spotted Lakes, LLC d/b/a 1845 Oil Field Services. Darrel Campbell was operating his sand hauler traveling south on U.S. 87. He was hauling sand for Spotted Lakes, LLC d/b/a 1845 Oil Field Services to fulfill their contract to deliver frac sand to Schlumberger Technology Corporation but at a different wellsite than Edison was heading to.

Although Campbell saw the vehicle Edison was operating as it initiated its left turn and although Campbell concluded at the speed he was traveling and the distance between his vehicle and Edison's, Edison could safely make the turn, for some strange reason Campbell accelerated his vehicle and, at the last moment, turned his vehicle to his left, into oncoming traffic, and struck the rear of the vehicle Edison was driving.

Robert Smith had been operating a vehicle, a 2006 F150 provided to him by his employer, on U.S. 87 traveling north. He was the third vehicle traveling behind Edison's vehicle; his wife, Linda Smith, was operating her personal vehicle in front of Robert Smith and behind a vehicle that was behind Edison. As Edison slowed to make his left hand turn, Robert Smith elected to pass the two vehicles stopped behind Edison, and the Edison vehicle itself, by traveling on the shoulder of U.S. 87. Just as Smith's vehicle

2

started to pass Edison, the vehicle operated by Campbell impacted Edison's vehicle and then impacted Smith's vehicle.

Robert Smith sustained serious personal injuries as a result of the collision. The vehicles involved in the occurrence suffered physical harm. Each was a total loss. MLH suffered a loss of use of its tractor and trailer for a reasonable time while it was being replaced.

3.

Following the collision, Robert Smith and his wife, Linda Smith, brought suit against Ryan Edison, STC, Darrel Campbell, MLH Enterprises, Inc. and Spotted Lakes, LLC d/b/a 1845 Oil Field Services, seeking thereby to recover for the personal injuries Robert Smith suffered, for the personal injuries Linda Smith had suffered as she was forced to observe the impact involving her husband while she herself was in the zone of danger and for the loss of consortium she suffered by reason of injury to her husband.

Progressive County Mutual Insurance Company, the insurance carrier for the vehicle Robert Smith was operating, filed suit against Schlumberger Technology Corporation and Ryan Edison. Progressive sought to recover the sums it had paid for the loss of the vehicle as an assignee to the owner's rights to recover.

MLH Enterprises, Inc. filed suit to recover for the loss of the vehicle and trailer Darrel Campbell had been operating, and for the loss of use of the vehicles during a reasonable time necessary to replace them. MLH Enterprises, Inc. brought its suit against STC and Ryan Edison.

4.

Prior to the occurrence made the basis of that suit, Spotted Lakes, LLC d/b/a 1845

Oil Field Services, on May 5, 2014, had entered into a Master Transportation Services

Agreement with STC. Paragraph 11 of that contract provided:

> Before performing any services, Carrier [1845] shall provide Shipper
> [STC] with certificates of insurance as described in this section.
> Without limiting Carrier's liability under the indemnification
> provisions in section 10 above, Carrier, at its sole cost and expense,
> shall maintain the following insurance during the validity of this
> Agreement ...
>
> Carrier's policies provided under this section shall be endorsed to:
> (i) name Shipper as an additional insured in respect of the policies
> listed; (ii) operate as primary in relation to any policies carried by
> Shipper; (iii) call for no contribution by any insurance carried by
> Shipper; (iv) provide waivers of subrogation in favor of Shipper; (v)
> provide for not less than 30 days written notice of cancellation or
> material change and (vi) name Carrier as loss payee.

One of the types of insurance specified in Paragraph 11 was Automotive Liability

Insurance with limits of $1,000,000 for bodily injury or death to persons or property

damage per occurrence.    Another was Excess Liability Insurance with limits of

$4,000,000.

In accordance with the provisions of Paragraph 11, Spotted Lakes, LLC d/b/a 1845

Oil Field Services was to provide insurance in the total amount of $5,000,000.  That

insurance would protect STC from all sums STC legally would be required to pay as

damages because of bodily injury and/or property damage caused by an accident and

resulting from the ownership or use of a vehicle hired by Spotted Lakes, LLC d/b/a 1845

Oil Field Services arising during the performance by 1845 of services under its contract

with Schlumberger Technology Corporation.

4

5.

Spotted Lakes, LLC d/b/a 1845 Oil Field Services did, in fact, obtain a commercial transportation policy in accordance with Paragraph 11 of the agreement. The policy was issued by Carolina Casualty Insurance Company, Policy No. CGT36204P, which provided commercial automobile coverage, effective May 1, 2014 to May 1, 2015, with limits of $1,000,000 per occurrence. That policy had an endorsement for additional insureds. In the suit brought by Robert Smith against STC and 1845, the trial court, at the request of Spotted Lakes, determined that the policy it had obtained from Carolina Casualty Insurance Company was as required by the Master Transportation Services Agreement identified above. As Carolina Casualty had assumed the defense of Spotted Lakes, LLC d/b/a 1845 Oil Field Services, Carolina Casualty is collaterally estopped from denying that finding of the trial court.

In addition, Spotted Lakes, LLC d/b/a 1845 Oil Field Services had obtained excess insurance that followed the Carolina Casualty policy with limits of $4,000,000 above the limits of the Carolina Casualty policy. That policy was also found by the trial court, in response to a request by Spotted Lakes, to be in accordance with the requirement of Paragraph 11 of the Master Transportation Services Agreement identified above. Carolina Casualty is collaterally estopped from denying that finding of the trial court as well. Because of the conduct of Carolina Casualty Insurance Company below described, however, the excess policy was not involved and is not involved in this dispute. A copy of the Carolina Casualty policy, insuring agreement, is attached hereto marked Exhibit "A."

6.

Because STC was sued for personal injury and property damage caused by an accident resulting from the use of the MLH vehicle operated by Darrel Campbell, on hire to Spotted Lakes, and arising during the performance by Spotted Lakes, LLC d/b/a 1845 Oil Field Services in accordance with its contract with Schlumberger Technology Corporation, STC was an additional insured under the commercial auto policy issued by Carolina Casualty Insurance Company, identified above.   STC was entitled to a legal defense to that suit paid for by Carolina Casualty.   STC was entitled to have Carolina Casualty pay the sums STC was obligated legally to pay as damages for personal injury and property damage.

STC performed all of the conditions, terms and covenants required to be performed by it in accordance with the insurance contract.   For some strange reason, Carolina Casualty refused to fulfill any of its obligations to defend and provide coverage to Schlumberger Technology Corporation and left Schlumberger Technology Corporation to its own devices.   Because Carolina Casualty Insurance Company refused to defend or provide coverage to Schlumberger Technology Corporation on the spurious claim that no coverage was required, the excess carrier insurance policy was not triggered or required to defend or indemnify.   Because of the conduct of Carolina Casualty Insurance Company, the excess carrier's policy was rendered a nullity.

Schlumberger Technology Corporation ultimately entered into a compromise settlement agreement with the parties that had brought suit against it for personal injury and property damage.   The amount paid in settlement was well in excess of $1,000,000.

That amount was fair and reasonable under the circumstances that existed. Schlumberger Technology Corporation also incurred reasonable and necessary attorney's fees and expenses in the defense and settlement of that suit in an amount within the jurisdictional limits of the court. The reasonable and necessary attorney's fees and expenses should have been paid by Carolina Casualty.

Schlumberger has suffered actual damages in defense and payment of the claims brought against it in an amount in excess of $1,000,000, which Carolina Casualty Insurance Company wrongfully refused to pay pursuant to its policy, for which Schlumberger Technology Corporation now brings suit to recover.

Alternatively, and without waiving any of the foregoing, and incorporating herein those allegations as set forth above, STC would further show that the conduct of Defendant constitutes a breach of Carolina Casualty Insurance Company's duty of good faith and fair dealing toward its insured, Schlumberger Technology Corporation. STC would further show that the conduct of Carolina Casualty was committed knowingly and constituted unfair and deceptive acts or practices in the settlement or administration of insurance claims, as prescribed by Sections 541.051 to 541.061, and Section 541.151 of the Texas Insurance Code. These violations have been a producing cause of the actual damages to STC herein alleged. Under the provisions of Section 541.152 of the Texas Insurance Code, STC is entitled to recover the amount of its actual damages, which actual damages as alleged above are in excess of $1,000,000, plus court costs and reasonable attorney's fees, and upon a finding that the Defendant knowingly committed said acts, an additional award of three times the amount of actual damages.

STC would further show that the acts of Carolina Casualty as alleged above, have estopped Defendant from denying coverage under the policy and the Plaintiff is entitled to a declaration of full coverage under the policy and is further entitled to its reasonable attorney's fees incurred in the prosecution and defense of this action.

Carolina Casualty has breached the written policy that has STC as an additional insured in the following respects:

1. By not providing an unconditional defense to any liability suit brought against STC arising out of the operation or use of a vehicle by Spotted Lakes, LLC d/b/a 1845 Oil Field Services arising from the provision of services to Schlumberger Technology Corporation as provided by the policy; and

2. By not paying claims of the bodily injury and mental anguish for those who are injured as a result of such occurrence and the property damage to vehicles involved in the occurrence.

7.

Plaintiff demands a trial by jury pursuant to Tex. R. Civ. P. 216.

8.

Pursuant to Rule 194, Defendant is requested to disclose within thirty (30) days of service of this request, the information or material described in Rule 194.2, (a)-(l).

WHEREFORE, PREMISES CONSIDERED, Schlumberger Technology Corporation prays that Carolina Casualty Insurance Company be cited to appear and answer herein, and that upon final trial, Schlumberger Technology Corporation be

8

granted judgment against Defendant in accordance with the claims fully set forth herein, for reasonable and necessary attorney's fees and expenses, for all costs of court and such and further relief, special or general, legal or equitable, as Schlumberger Technology Corporation may be shown to be justly entitled to receive.

Respectfully submitted,

HARTLINE BARGER LLP
800 N. Shoreline Blvd.
2000 One Shoreline Plaza, North Tower
Corpus Christi, Texas 78401
(361) 866-8000
(361) 866-8039 Facsimile
Email: mterry@hartlinebarger.com


By:   */s/ Michael G. Terry*
      Michael G. Terry
      State Bar No. 19799800

**ATTORNEYS FOR PLAINTIFF**

**A STOCK COMPANY**



# CCIC
## Carolina Casualty Insurance Company

*P. O. Box 2575*
*Jacksonville, Florida 32203*
*(904) 363-0900 (800) 874-8053*

# COMMERCIAL TRANSPORTATION POLICY







EXHIBIT "A"

The President and Secretary of CAROLINA CASUALTY INSURANCE COMPANY have signed this policy.


_Secretary_
Kathleen D. Webb

_President_
Gerald B. Bushey


**THIS POLICY CONSISTS OF:**


**---DECLARATIONS**
**---COMMON POLICY CONDITIONS**
**---ONE OR MORE COVERAGE PARTS. A COVERAGE PART CONSISTS OF:**
- **ONE OR MORE COVERAGE FORMS**
- **APPLICABLE FORMS AND ENDORSEMENTS**



**CCIC**
*Carolina Casualty Insurance Company*

4600 Touchton Rd
Building 100, 4ᵗʰ Floor
Post Office Box 2575
Jacksonville, FL 32246
Telephone 904-363-0900

# SUMMARY DECLARATIONS
# COMMERCIAL TRANSPORTATION POLICY

**Policy Number**          CGT_362084_P

New Business

**General Agent**          2402
R-T Specialty, LLC
1100 Walnut Street, Suite 3200
Kansas City, MO 64106
816-842-8222

**Named Insured & Mailing Address**
D&T Holdings, LLC  dba
Spotted Lakes, LLC dba 1845 Oil Field
Services; D&T Trucking, LLC; Rowdy
Farms, LLC dba 1845 Oil Field Transport;
Gila Hotshot LP dba Gila Trucking, LLC
1995 Ranger Highway
Weatherford, Texas 76088

**Producing Agent**
R-T Specialty, LLC
1100 Walnut Street, Suite 3200
Kansas City, MO 64106
816-842-8222

**Policy Period:**          From May 1, 2014 to May 1, 2015 at 12:01 a.m. Standard Time at
your mailing address shown above.

**Business Description:**          Truckman

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

|  | Premium |
|---|---|
| Commercial Automobile Coverage Part |  |
| Cargo Coverage Part |  |
| Commercial General Liability Coverage Part |  |
| Other |  |
|  | Total Premium |
| Surcharges |  |
| Taxes |  |
|  | Down Payment |
| Security Deposit (Premium and/or Deductible) | Deposit |
| Texas Auto Theft Prevention Authority Fee |  |

**THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM DECLARATIONS, COVERAGE FORM(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.**

Countersigned May 1, 2014 by

_____

**CTP 5291 CPS (09/04)**          CAROLINA CASUALTY INSURANCE COMPANY          **Page 1 of 1**
CGT_362084_P / CGT_362084_P-1 2014-05-29 09:15:24.563
NEWBUSINES 2014-05-01 0 / New Business

# EXHIBIT "A"

**Item 3  Schedule of Covered Autos You Own**

Per schedule on file with company

**Item 4  Schedule of Hired or Borrowed Covered Auto Coverage and Premiums**

|  | Estimated Premium |
|---|---|
| **Liability Coverage - Rating Basis, Cost of Hire – Autos Used in Your Trucking/Motor Carrier Operations** | |

Liability Coverage
      Estimated Cost of Hire = If Any
      Rate Per Each $100 Cost of Hire = 6.53212

**Cost of hire** means:
(a) the total dollar amount of costs you incurred for the hire of automobiles (includes trailers and semi-trailers), and if not included therein.
(b) the total remunerations of all operators and drivers helpers, of hired automobiles whether hired with a driver by lessor or an employee of the lessee, or any other third party, and,
(c) the total dollar amount of any other costs (i.e. repair, maintenance, fuel, etc.) directly associated with operating the hired automobiles whether such costs are absorbed by the insured, paid to the lessor or owner, or paid to others.

**Item 5  Schedule for Non-Ownership Liability**                                   **Estimated Premium**

      Number of Employees = 101 - 500

**Item 6  Trailer Interchange Coverage**                                       **Premium**

**Forms and Endorsements Applying to this Coverage Part and Made Part of this Policy at Time of Issue:**

| | | |
|---|---|---|
| 506 | 09/2011 | Auto Theft Prevention Authority Pass-Through Fee |
| 923 | 04/2012 | Important Notice to Policyholders - Availability of Loss Prevention Services Texas |
| 943 | 12/2009 | Monthly Report of Units |
| CA 00 20 | 10/2013 | Motor Carrier Coverage Form |
| CA 01 96 | 10/2013 | Texas Changes |
| CA 02 43 | 11/2013 | Texas Changes - Cancellation and Nonrenewal |
| CA 04 44 | 10/2013 | Waiver of Transfer of Rights of Recovery Against Others To Us (Waiver of Subrogation) |
| CA 20 01 | 03/2006 | Lessor - Additional Insured and Loss Payee |
| CA 22 64 | 10/2013 | Texas Personal Injury Protection Endorsement |
| CA 23 94 | 10/2013 | Silica or Silica-Related Dust Exclusion for Covered Autos Exposure |
| CA 99 48 | 10/2013 | Pollution Liability-Broadened Coverage for Covered Autos-Business Auto, Motor Carrier and Truckers Coverage Forms |
| CTP 5283 CPS | 09/2004 | Truckers/Motor Carrier Coverage Form Declarations |
| CTP 5284PJ | 12/2013 | Commercial Transportation Policy Jacket |
| CTP 5291 CPS | 09/2004 | Summary Declarations Commercial Transportation Policy |
| CTP 5303 | 01/1992 | Punitive Damages Exclusion |
| CTP 5567 | 01/2007 | Calculation of Premium |
| CTP 5606 | 03/2009 | Amendment of the Definition of "Auto" |
| CTP 5625 | 01/2006 | Blanket Additional Insured |
| CTP 5626 | 11/2003 | Wrongful Delivery of Products |
| CTP 5696 | 03/2009 | Texas Abuse or Molestation Exclusion |
| CTP 5763 | 04/2009 | Reporting Form Endorsement - Power Units |
| CTP 5785 | 04/2010 | Transportation Broker or Freight Forwarder Liability Operations Exclusion |

# EXHIBIT "A"

| IL 00 17 | 11/1998 | Common Policy Conditions |
| IL 00 21 | 09/2008 | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| MCS 90 | 11/2011 | Endorsement for Motor Carrier Policies of Insurance for Public Liability Under Sections 29 and 30 of the Motor Carrier Act of 1980 |

These declarations and the summary declarations, together with the common policy conditions, coverage form(s) and endorsements, if any issued to form a part thereof, complete the above numbered policy.

**CTP 5283 CPS (09/04)**    CAROLINA CASUALTY INSURANCE COMPANY    **Page 3 of 3**
CGT_362084_P / CGT_362084_P-1 2014-05-29 09:15:24.563
NEWBUSINES 2014-05-01 0 / New Business

EXHIBIT "A"

POLICY NUMBER: CGT_362084_P

**COMMERCIAL AUTO**
**CA 00 20 10 13**

# MOTOR CARRIER COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VI – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| **61** | Any "Auto" | |
| **62** | Owned "Autos" Only | Only the "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while connected to a power unit you own). This includes those "autos" you acquire ownership of after the policy begins. |
| **63** | Owned Private Passenger Type "Autos" Only | Only the "private passenger type" "autos" you own. This includes those "private passenger type" "autos" that you acquire ownership of after the policy begins. |
| **64** | Owned Commercial "Autos" Only | Only those trucks, tractors and "trailers" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while connected to a power unit you own). This includes those trucks, tractors and "trailers" you acquire ownership of after the policy begins. |
| **65** | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the no-fault law in the state where they are licensed or principally garaged. |
| **66** | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that, because of the law in the state where they are licensed or principally garaged, are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| **67** | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| **68** | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "private passenger type" "auto" you lease, hire, rent or borrow from any member of your household, any of your "employees", partners (if you are a partnership), members (if you are a limited liability company), or agents or members of their households. |
| **69** | "Trailers" In Your Possession Under A Written Trailer Or Equipment Interchange Agreement | Only those "trailers" you do not own while in your possession under a written "trailer" or equipment interchange agreement in which you assume liability for "loss" to the "trailers" while in your possession. |

**CA 00 20 10 13**

© Insurance Services Office, Inc., 2011

**Page 1 of 15**

EXHIBIT "A"

| Symbol | | Description Of Covered Auto Designation Symbols |
|---|---|---|
| 70 | Your "Trailers" In The Possession Of Anyone Else Under A Written Trailer Interchange Agreement | Only those "trailers" you own or hire while in the possession of anyone else under a written "trailer" interchange agreement. When Symbol 70 is entered next to a Physical Damage Coverage in Item Two of the Declarations, the Physical Damage Coverage exclusion relating to "loss" to a "trailer" in the possession of anyone else does not apply to that coverage. |
| 71 | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "private passenger type" "autos" owned by your "employees" or partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs. |
| 79 | "Mobile Equipment" Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |

## B. Owned Autos You Acquire After The Policy Begins

1. If Symbols 61, 62, 63, 64, 65, 66 or 79 are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol 67 is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

## C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos

If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

## SECTION II – COVERED AUTOS LIABILITY COVERAGE

## A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

 © Insurance Services Office, Inc., 2011
CGT_362084_P / CGT_362084_P-1 2014-05-29 09:15:24.563 NEWBUSINES
2014-05-01 0 / New Business

EXHIBIT "A"

We will have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. Who Is An Insured**

The following are "insureds":

a. You for any covered "auto".

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

   (1) The owner or any "employee", agent or driver of the owner, or anyone else from whom you hire or borrow a covered "auto".

   (2) Your "employee" or agent if the covered "auto" is owned by that "employee" or agent or a member of his or her household.

   (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

   (4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), a lessee or borrower of a covered "auto" or any of their "employees", while moving property to or from a covered "auto".

   (5) A partner (if you are a partnership), or member (if you are a limited liability company), for a covered "auto" owned by him or her or a member of his or her household.

c. The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit, or, if not connected, is being used exclusively in your business.

d. The lessor of a covered "auto" that is not a "trailer" or any "employee", agent or driver of the lessor while the "auto" is leased to you under a written agreement if the written agreement between the lessor and you does not require the lessor to hold you harmless and then only when the leased "auto" is used in your business as a "motor carrier" for hire.

e. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

However, none of the following is an "insured":

   (1) Any "motor carrier" for hire or his or her agents or "employees", other than you and your "employees":

      (a) If the "motor carrier" is subject to motor carrier insurance requirements and meets them by a means other than "auto" liability insurance.

      (b) If the "motor carrier" is not insured for hired "autos" under an "auto" liability insurance form that insures on a primary basis the owners of the "autos" and their agents and "employees" while the "autos" are leased to that "motor carrier" and used in his or her business.

   However, Paragraph (1) above does not apply if you have leased an "auto" to the for-hire "motor carrier" under a written lease agreement in which you have held that "motor carrier" harmless.

   (2) Any rail, water or air carrier or its "employees" or agents, other than you and your "employees", for a "trailer" if "bodily injury" or "property damage" or a "covered pollution cost or expense" occurs while the "trailer" is detached from a covered "auto" you are using and:

      (a) Is being transported by the carrier; or

      (b) Is being loaded on or unloaded from any unit of transportation by the carrier.

**2. Coverage Extensions**

a. **Supplementary Payments**

We will pay for the "insured":

   (1) All expenses we incur.

   (2) Up to $2,000 for the cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

CGT_362084_P / CGT_362084_P-1 2014-05-29 09:15:24.563 NEWBUSINES
2014-05-01 0 / New Business

EXHIBIT "A"

(3) The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

(4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

(5) All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend; but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-of-state Coverage Extensions**

While a covered "auto" is away from the state where it is licensed, we will:

(1) Increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limit specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing "motor carriers" of passengers or property.

(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of "loss" because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

(1) Employment by the "insured"; or

(2) Performing the duties related to the conduct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to:

**a.** Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

© Insurance Services Office, Inc., 2011

CGT_362084_P / CGT_362084_P-1 2014-05-29 09:15:24.563 NEWBUSINES
2014-05-01 0 / New Business

EXHIBIT "A"

**b.** The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph **a.** above.

### 6. Care, Custody Or Control

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

### 7. Handling Of Property

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

### 8. Movement Of Property By Mechanical Device

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

### 9. Operations

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

### 10. Completed Operations

"Bodily injury" or "property damage" arising out of "your work" after that work has been completed or abandoned.

In the exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

**(1)** When all of the work called for in your contract has been completed;

**(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

### 11. Pollution

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

© Insurance Services Office, Inc., 2011

CGT_362084_P / CGT_362084_P-1 2014-05-29 09:15:24.563 NEWBUSINES
2014-05-01 0 / New Business

EXHIBIT "A"

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(b) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

### 12. War

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

### 13. Racing

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

## C. Limit Of Insurance

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III – TRAILER INTERCHANGE COVERAGE

### A. Coverage

1. We will pay all sums you legally must pay as damages because of "loss" to a "trailer" you don't own or its equipment under:

   **a. Comprehensive Coverage**

   From any cause except:

   (1) The "trailer's" collision with another object; or

   (2) The "trailer's" overturn.

   **b. Specified Causes Of Loss Coverage**

   Caused by:

   (1) Fire, lightning or explosion;

   (2) Theft;

   (3) Windstorm, hail or earthquake;

   (4) Flood;

   (5) Mischief or vandalism; or

   (6) The sinking, burning, collision or derailment of any conveyance transporting the "trailer".

   **c. Collision Coverage**

   Caused by:

   (1) The "trailer's" collision with another object; or

   (2) The "trailer's" overturn.

© Insurance Services Office, Inc., 2011

CGT_362084_P / CGT_362084_P-1 2014-05-29 09:15:24.563 NEWBUSINES
2014-05-01 0 / New Business

EXHIBIT "A"

2. We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for any "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

3. **Coverage Extensions**

   The following apply as **Supplementary Payments**. We will pay for you:

   **a.** All expenses we incur.

   **b.** The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance.

   **c.** All reasonable expenses incurred at our request, including actual loss of earnings up to $250 a day because of time off from work.

   **d.** All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

   **e.** All interest on the full amount of any judgment that accrues after entry of the judgment; but our duty to pay interest ends when we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

   These payments will not reduce the Limit of Insurance.

**B. Exclusions**

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   **a. Nuclear Hazard**

   **(1)** The explosion of any weapon employing atomic fission or fusion; or

   **(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

   **b. War Or Military Action**

   **(1)** War, including undeclared or civil war;

   **(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   **(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for loss of use.

3. **Other Exclusions**

   We will not pay for "loss" due and confined to:

   **a.** Wear and tear, freezing, mechanical or electrical breakdown.

   **b.** Blowouts, punctures or other road damage to tires.

   This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

**C. Limits Of Insurance**

The most we will pay for "loss" to any one "trailer" is the least of the following amounts:

1. The actual cash value of the damaged or stolen property at the time of the "loss";

2. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality; or

3. The Limit Of Insurance shown in the Declarations.

**D. Deductible**

For each covered "trailer", our obligation to pay:

1. The actual cash value of the damaged or stolen property at the time of the "loss" will be reduced by the applicable deductible shown in the Declarations.

2. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality will be reduced by the applicable deductible shown in the Declarations.

3. The damages for "loss" that would otherwise be payable will be reduced by the applicable deductible shown in the Declarations prior to the application of the Limit Of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2011

CGT_362084_P / CGT_362084_P-1 2014-05-29 09:15:24.563 NEWBUSINES
2014-05-01 0 / New Business

EXHIBIT "A"

## SECTION IV – PHYSICAL DAMAGE COVERAGE

### A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

   **a. Comprehensive Coverage**

   From any cause except:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

   **b. Specified Causes Of Loss Coverage**

   Caused by:

   (1) Fire, lightning or explosion;

   (2) Theft;

   (3) Windstorm, hail or earthquake;

   (4) Flood;

   (5) Mischief or vandalism; or

   (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   **c. Collision Coverage**

   Caused by:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

2. **Towing – Private Passenger Type Autos**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the "private passenger type" is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   a. Glass breakage;

   b. "Loss" caused by hitting a bird or animal; and

   c. "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extension**

   **a. Transportation Expenses**

   We will also pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the "private passenger type". We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

   **b. Loss Of Use Expenses**

   For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

   (1) Other than collision only if the Declarations indicates that Comprehensive Coverage is provided for any covered "auto";

   (2) Specified Causes Of Loss only if the Declarations indicates that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

   (3) Collision only if the Declarations indicates that Collision Coverage is provided for any covered "auto".

   However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

### B. Exclusions

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   **a. Nuclear Hazard**

   (1) The explosion of any weapon employing atomic fission or fusion; or

   (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

© Insurance Services Office, Inc., 2011
CGT_362084_P / CGT_362084_P-1 2014-05-29 09:15:24.563 NEWBUSINES
2014-05-01 0 / New Business

CA 00 20 10 13

EXHIBIT "A"

**b. War Or Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any of the following:

**a.** Any covered "auto" while in anyone else's possession under a written "trailer" interchange agreement. But this exclusion does not apply to a loss payee; however, if we pay the loss payee, you must reimburse us for our payment.

**b.** Any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**c.** Tapes, records, discs or similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

**d.** Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

**e.** Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

**f.** Any accessories used with the electronic equipment described in Paragraph **e.** above.

**3.** Exclusions **2.e.** and **2.f.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

**a.** Permanently installed in or upon the covered "auto";

**b.** Removable from a housing unit which is permanently installed in or upon the covered "auto";

**c.** An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

**d.** Necessary for the normal operation of the "auto" or the monitoring of the "auto's" operating system.

**4.** We will not pay for "loss" due and confined to:

**a.** Wear and tear, freezing, mechanical or electrical breakdown.

**b.** Blowouts, punctures or other road damage to tires.

This exclusion does not apply to "loss" resulting from the total theft of a covered "auto".

**5.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limits Of Insurance**

**1.** The most we will pay for:

**a.** "Loss" to any one covered "auto" is the lesser of:

**(1)** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**(2)** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**b.** All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss" is $1,000, if, at the time of "loss", such electronic equipment is:

**(1)** Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

**(2)** Removable from a permanently installed housing unit as described in Paragraph **b.(1)** above; or

**(3)** An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

© Insurance Services Office, Inc., 2011

CGT_362084_P / CGT_362084_P-1 2014-05-29 09:15:24.563 NEWBUSINES
2014-05-01 0 / New Business

EXHIBIT "A"

### D. Deductible

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

## SECTION V – MOTOR CARRIER CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

### A. Loss Conditions

#### 1. Appraisal For Physical Damage Loss

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

#### 2. Duties In The Event Of Accident, Claim, Suit Or Loss

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

  (1) How, when and where the "accident" or "loss" occurred;

  (2) The "insured's" name and address; and

  (3) To the extent possible, the names and addresses of any injured persons and witnesses.

b. Additionally, you and any other involved "insured" must:

  (1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

  (2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

  (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

  (4) Authorize us to obtain medical records or other pertinent information.

  (5) Submit to examination at our expense, by physicians of our choice, as often as we reasonably require.

c. If there is a "loss" to a covered "auto" or its equipment, you must also do the following:

  (1) Promptly notify the police if the covered "auto" or any of its equipment is stolen.

  (2) Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

  (3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

  (4) Agree to examination under oath at our request and give us a signed statement of your answers.

#### 3. Legal Action Against Us

No one may bring a legal action against us under this Coverage Form until:

a. There has been full compliance with all the terms of this Coverage Form; and

b. Under Covered Autos Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

#### 4. Loss Payment – Physical Damage Coverages

At our option, we may:

a. Pay for, repair or replace damaged or stolen property;

b. Return the stolen property at our expense. We will pay for any damage that results to the "auto" from the theft; or

c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

© Insurance Services Office, Inc., 2011

CA 00 20 10 13

CGT_362084_P / CGT_362084_P-1 2014-05-29 09:15:24.563 NEWBUSINES
2014-05-01 0 / New Business

EXHIBIT "A"

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligation under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee – Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. Other Insurance – Primary And Excess Insurance Provisions**

**a.** While any covered "auto" is hired or borrowed from you by another "motor carrier", this Coverage Form's Covered Autos Liability Coverage is:

**(1)** Primary if a written agreement between you as the lessor and the other "motor carrier" as the lessee requires you to hold the lessee harmless.

**(2)** Excess over any other collectible insurance if a written agreement between you as the lessor and the other "motor carrier" as the lessee does not require you to hold the lessee harmless.

**b.** While any covered "auto" is hired or borrowed by you from another "motor carrier", this Coverage Form's Covered Autos Liability Coverage is:

**(1)** Primary if a written agreement between the other "motor carrier" as the lessor and you as the lessee does not require the lessor to hold you harmless, and then only while the covered "auto" is used exclusively in your business as a "motor carrier" for hire.

**(2)** Excess over any other collectible insurance if a written agreement between the other "motor carrier" as the lessor and you as the lessee requires the lessor to hold you harmless.

**c.** While a covered "auto" which is a "trailer" is connected to a power unit, this Coverage Form's Covered Autos Liability Coverage is:

**(1)** Provided on the same basis, either primary or excess, as the Covered Autos Liability Coverage provided for the power unit if the power unit is a covered "auto".

**(2)** Excess if the power unit is not a covered "auto".

**d.** Any Trailer Interchange Coverage provided by this Coverage Form is primary for any covered "auto".

**e.** Except as provided in Paragraphs **a.**, **b.**, **c.** and **d.** above, this Coverage Form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you don't own.

**f.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**g.** Regardless of the provisions of Paragraphs **a.**, **b.**, **c.**, **d.** and **e.** above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract".

© Insurance Services Office, Inc., 2011

CGT_362084_P / CGT_362084_P-1 2014-05-29 09:15:24.563 NEWBUSINES
2014-05-01 0 / New Business

EXHIBIT "A"

**h.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

**a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**(1)** The United States of America;

**(2)** The territories and possessions of the United States of America;

**(3)** Puerto Rico;

**(4)** Canada; and

**(5)** Anywhere in the world if a covered "auto" of the "private passenger type" is leased, hired, rented or borrowed without a driver for a period of 30 days or less,

provided that the "insured's's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico or Canada, or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

**SECTION VI – DEFINITIONS**

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

**1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

© Insurance Services Office, Inc., 2011

CGT_362084_P / CGT_362084_P-1 2014-05-29 09:15:24.563 NEWBUSINES
2014-05-01 0 / New Business

EXHIBIT "A"

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

   (1) Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

   (2) Otherwise in the course of transit by or on behalf of the "insured"; or

   (3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

   (1) The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

   (2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs b. and c. above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto", if:

   (a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

   (b) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

E. "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

F. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

G. "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

H. "Insured contract" means:

   1. A lease of premises;

   2. A sidetrack agreement;

   3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

   6. That part of any other contract or agreement, entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

a. That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

© Insurance Services Office, Inc., 2011
CGT_362084_P / CGT_362084_P-1 2014-05-29 09:15:24.563 NEWBUSINES
2014-05-01 0 / New Business

EXHIBIT "A"

**b.** That pertains to the loan, lease or rental of an "auto" to you or any of your employees, if the "auto" is loaned, leased or rented with a driver; or

**c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" unless the covered "auto" is used in your business as a "motor carrier" for hire as in Section **II**, Paragraph **A.1.d.** of the Who Is An Insured provision.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**2.** Vehicles maintained for use solely on or next to premises you own or rent;

**3.** Vehicles that travel on crawler treads;

**4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**a.** Power cranes, shovels, loaders, diggers or drills; or

**b.** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**5.** Vehicles not described in Paragraph 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

**b.** Cherry pickers and similar devices used to raise or lower workers; or

**6.** Vehicles not described in Paragraph 1., 2., 3. or 4. above, maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**a.** Equipment designed primarily for:

**(1)** Snow removal;

**(2)** Road maintenance, but not construction or resurfacing; or

**(3)** Street cleaning;

**b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Motor carrier" means a person or organization providing transportation by "auto" in the furtherance of a commercial enterprise.

**M.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**N.** "Private passenger type" means a private passenger or station wagon type "auto" and includes an "auto" of the pickup or van type if not used for business purposes.

**O.** "Property damage" means damage to or loss of use of tangible property.

**P.** "Suit" means a civil proceeding in which:

**1.** Damages because of "bodily injury" or "property damage"; or

© Insurance Services Office, Inc., 2011

CGT_362084_P / CGT_362084_P-1 2014-05-29 09:15:24.563 NEWBUSINES
2014-05-01 0 / New Business

EXHIBIT "A"

**2.** A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

  **a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

  **b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" submits with our consent.

**Q.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**R.** "Trailer" includes a semitrailer or a dolly used to convert a semitrailer into a trailer. But for Trailer Interchange Coverage only, "trailer" also includes a container.

© Insurance Services Office, Inc., 2011

CGT_362084_P / CGT_362084_P-1 2014-05-29 09:15:24.563 NEWBUSINES
2014-05-01 0 / New Business

EXHIBIT "A"

**CAUSE NO. 20-04-25,134**

| | | |
|---|---|---|
| SCHLUMBERGER TECHNOLOGY | ) | |
| CORPORATION, | ) | IN THE DISTRICT COURT |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | 267TH JUDICIAL DISTRICT |
| | ) | |
| CAROLINA CASUALTY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
|     Defendant. | ) | DEWITT COUNTY, TEXAS |

## DEFENDANT'S ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Carolina Casualty Insurance Company, the defendant in the above entitled and numbered cause, and files this its original answer to the plaintiff's original petition on file herein, and in support thereof would respectfully show the Court as follows:

I.

The defendant hereby generally denies the allegations contained in the plaintiff's petition on file herein pursuant to Rule 92 of the Texas Rules of Civil Procedure, and thus asserts its privilege of insisting that such allegations be proven by a preponderance of credible evidence.

II.

Pursuant to Rule 193.7 of the Texas Rules of Civil Procedure, the defendant notifies all parties to this lawsuit of the defendant's intent to introduce as evidence at any pretrial proceeding or at trial any document produced by any party in discovery in this lawsuit.

III.

The defendant specifically reserves the right to amend its answer to plead any affirmative defenses or other matters that must be specially pled and to assert any counterclaims or third-party claims it may have after discovery in this case is complete.

WHEREFORE, PREMISES CONSIDERED, the defendant, Carolina Casualty Insurance Company, moves and prays the Court that upon trial hereof, the plaintiff recover nothing, and that the defendant go hence with its costs, and for such other and further relief, both general and special, legal and equitable, to which defendant may show itself justly entitled to receive.

Respectfully submitted,

ORGAIN BELL & TUCKER, LLP
P O Box 1751
Beaumont, TX 77704-1751
(409) 838-6412
(409) 838-6959 facsimile

/s/ Greg C. Wilkins
Greg C. Wilkins
State Bar No. 00797669
gcw@obt.com
Nadia I. Gire
State Bar No. 24076852
ngire@obt.com

ATTORNEYS FOR DEFENDANT,
CAROLINA CASUALTY
INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I do hereby certify that on the 29th day of May, 2020, I electronically filed the foregoing with the DeWitt County District Clerk via eFile Texas which will send notification of such filing to each counsel of record.

/s/ Greg C. Wilkins
Greg C. Wilkins